[No. 2033]

## MONTGOMERY SHOSHONE MINES COMPANY, A CORPORATION, RESPONDENT, *v.* LAS VEGAS AND TONOPAH RAILROAD COMPANY, A CORPORATION, APPELLANT.

1. CARRIERS—RATES OF FREIGHT—ORE—"ENTIRE CONTENTS."

    Under a tariff fixing freight rates on ore at a valuation of not less than $100 per ton, determined from the gross assay value of the entire contents according to the market price of the metal product at destination after deducting the charges for assay, smelting, and handling at the smelter, and then fixing the actual rate at certain figures based on the value per ton, ore on which the assay value per ton, exclusive of moisture, was $57.88 as against $63.96 per ton for dry ore, was properly valued for the purpose of determining the freight rate at its valuation per ton including the moisture content; moisture being included in the words "entire contents."

2. CARRIERS—CARRIAGE OF GOODS—RATES ON ORE—CONCLUSIVENESS OF SMELTER'S CERTIFICATE.

    Upon a shipment of ore under tariff rates providing for determining the valuation from the gross assay value of the entire contents at destination after deducting the charges for assaying, etc., the carrier was not bound to accept the certificate of valuation furnished by the smelting company receiving it, where such certificate was not determined in accordance with the carrier's rules and regulations.

APPEAL from the Fifth Judicial District Court, Nye County; *Mark R. Averill*, Judge.

Action by the Montgomery Shoshone Mines Company, a corporation, against the Las Vegas and Tonopah Railroad Company, a corporation. Judgment for plaintiff, and defendant appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*C. O. Whittemore,* for Appellant:

The railroad company is governed and controlled absolutely, under the provisions of its published tariff, in fixing the freight rate, by the certificate of valuation furnished to it by the smelter company.

The court below arrived at the conclusion that the moisture in the ore is a part of the "entire contents," of which the assay value is to be determined. That this conclusion is erroneous needs only to be stated to be seen. The only "contents" in the ore which have a value are the metal contents, the gold and silver; the water or moisture in the ore has no value, so that the words "entire contents" relate to the metal contents, and have no reference to water or moisture contained in the ore. This is further evident when we consider that the value of the "entire contents" is fixed "according to the market price of the metal product at destination."

The provisions of the published tariff referred to, which are binding both upon the respondent and the appellant, make the smelter company the arbiter of the valuations of the ore shipments.

*Key Pittman* and *F. K. Pittman,* for Respondent:

It is apparent that, if the words "entire contents" referred simply to the silver and gold in the ore, the only difference in the value of various ores would be the difference in proportion in weight of gold and silver in the rock, and naturally no ore whose entire contents are considered to be either gold or silver could be of a less value than $8,000 per ton.

The fact that the smelter company paid the railroad company excessive freight charges does not relieve the appellant of the necessity of refunding such money to respondent, because it was the money of respondent that was paid by the smelter company to the railroad company, and the railroad company, the appellant herein, now holds money belonging to respondent that it obtained possession of through a mistake and without consideration.

The contract with the smelter company is based upon dry ore, while the contract with the appellant herein, the

transportation company, is based upon the value of the entire contents. The smelter was not appointed the arbitrator, but the gross value of the entire contents as certified by the smelter was to be used in determining the value to be placed upon the ore for the purpose of freight charges.

By the Court, NORCROSS, J.:

This is an action by respondent against appellant to recover damages for alleged excess charges in the transportation of ore over appellant's railroad and certain connecting lines from Rhyolite, Nevada, to Murray, Utah; the ore being consigned to the American Smelting and Refining Company at the latter point. There is no dispute as to facts in this case, and the sole question to be determined is as to whether or not the trial court erred in its construction of appellant's published tariff and schedule, which constituted the contract governing the charges for such ore shipments.

The court found, among other facts, the following:

"That at the time said ores were agreed to be shipped and were received and transported from the said town of Rhyolite to the said consignee at Murray, Utah, there were on file in the office of the Interstate Commerce Commission at Washington, D. C., and in the local office of said defendant at Rhyolite, Nevada, certain tariffs, rate sheets, schedules and rules and regulations publishing the freight rates on ores shipped from Rhyolite, Nevada, to Murray, Utah, and other points. That said tariffs, schedules, rates, etc., so filed and published, in fixing the rates to be charged on the shipment of such ore or ores of such character from said town of Rhyolite to the said American Smelting and Refining Company at Murray, Utah, contained the following words and figures, to wit: 'In Dollars and Cents per Ton of 2,000 lbs. Value per ton of 2,000 lbs. Not exceeding: Value $20, rate $5.00; value $30, rate $6.00; value $40, rate $6.50; value $50, rate $8.00; value $60, rate $9.00; value $70, rate $10.00; value $80, rate $10.50; value $90, rate

$11.00; value $100, rate $12.00; value $150, rate $14.00; value $200, rate $15.50; value $250, rate $17.60; value $350, rate $18.50.  Agents must forward ore at rates applying on valuation of *not less than one hundred dollars* ($100.00) per ton of 2,000 pounds, which rates will be subject to change according to certificate of valuation furnished by the smelting and refining companies at destination, said valuation being determined as follows: From the *gross assay value* of the entire contents, according to the market price of the metal product at destination, *deduct* the charges for assaying, smelting and handling at the smelter.  Actual rate: Freight charges will be applied on the result in valuation per ton in accordance with the rates shown in this tariff.'  The caption of the excerpt from the tariffs and rate schedules, reading 'In Dollars and Cents per Ton of 2,000 lbs. Value per ton of 2,000 lbs.  Not exceeding:' qualifies each of the valuations following under such caption. For instance: Ore not exceeding $20, rate $5.00; ore not exceeding $30, rate $6.00; and so through the schedule."

There were introduced in evidence and made a part of the findings of fact, for the purpose of illustration, the certificates furnished by the smelting company to appellant and respondent with regard to a certain shipment known as shipment No. 39.  The certificate furnished by the smelting company to the shipper, respondent herein, showed the gross weight of ore received; the percentage of moisture therein; the net or dry weight of the ore after deducting the amount of moisture; the value per ton, based on such net or dry weight; and the amount deducted per ton as a smelting or working charge.  The moisture content, according to this certificate, was 9.5 per cent, aggregating 6,604 pounds, which being deducted from the gross weight for which the smelting company paid the plaintiff at the rate of $63.96 per ton after deducting freight advanced at $10 per ton upon the gross weight, amounted to $347.60.

The certificate furnished the appellant railroad company on account of said shipment No. 39 gave the weight

as 69,520 pounds and the actual value at $63.96 per ton of 2,000 pounds. No mention whatever of the moisture content was made in the certificate.

1. Based upon the weight of the ore, inclusive of the moisture content, the assay value per ton, after deducting smelting charges, of shipment No. 39 would be $57.88, as against $63.96 per ton, the corresponding value of the dry ore. Whether the moisture should or should not be considered in determining the value of the ore for rate purposes under the tariff and schedule of the appellant would make a difference of one dollar per ton in the freight charge upon this particular ore shipment. The evidence shows that, in the several ore shipments involved in the case, the moisture content of the ore varied from about 7 per cent to about 20 per cent. The freight rate actually charged the respondent was based on the value of the dry ore per ton, and this rate was applied to the weight of the ore inclusive of moisture. It was the contention of plaintiff, and so held by the court below, that the value of the ore for purposes of determining the freight rate, under appellant's tariff and schedule, was the value per ton inclusive, and not exclusive, of the moisture content. We think this is the only reasonable construction to be placed upon the words "gross assay value of the entire contents," used in the rules adopted by the appellant company for determining the proper freight rate to be applied to ore shipments. The moisture content must be transported by the carrier, and the shipper must pay freight upon the same, although no values can be extracted from such moisture. As of necessity it must be included in determining the weight, upon which the rate shall be applied, no good reason suggests itself why it should not be considered in determining the value of the ore shipped for the purpose of determining the proper rate to be applied. The moisture being a part of the contents of the ore transported, it is included within the meaning of the words "entire contents" used in the rule for determining the proper assay value from which the rate is determined.

**2.** Counsel for appellant urges the point that, according to the regulations published, the carrier is bound to accept the certificate of valuation furnished by the smelting and refining company. We think this contention is without merit, where it is shown that the certificate of valuation furnished by the smelting company is not determined in accordance with the rules and regulations of the carrier for making such determination. The carrier is bound to obtain from the smelting company the value of the ore per ton based upon the "entire contents" of the shipment, upon which the rate, based upon such value, is to apply.

The judgment is affirmed.